May it please the Court, Tracy Dreisbull, Assistant Federal Public Defender, on behalf of Warren Jackson. My issues are very similar to those in the last case. The Court has now spent an hour parsing the language of Section 404 of the First Step Act. I'd like to take a step back and talk about what I think that section means based on the language and the statutory cues and the structure and headings that Congress gave us. The eligibility determination, I believe, is set forth in Subsection A, where it defines a covered offense, as I think the Court is now in agreement, to be an offense where the statutory penalties were modified by Section 203 of the First Sentencing Act. Basically, that sets forth a class of defendants who are eligible to ask the Court to review their sentence, and that class is the title of Subsection B, defendants previously sentenced. There's no complicated analysis in this step. It sets forth an entire class of offenders, and then it shoots the job back to the District Court. And it says that the Court may thereafter impose a sentence as if the Fair Sentencing Acts were in effect at the time of the offense. And that as if, I think, poses a question that is uniquely within the knowledge and simply asking, Judge, what would you have done for this defendant on this offense if the Fair Sentencing Act had been in effect at the time? And then we go to number C, or letter C, excuse me, the limitations. The only limitation in the statute is you don't get a second chance, no two bites at the apple. That's it. And I think it's very important to remember that this statute came after a decade of litigation over the exact limitations that the government is asking this Court now to impose on Section 404. If Congress had wanted to require that the defendant's statutory minimum actually have changed, it would have used the based-on language. The based-on language from 3582C2 went to the Supreme Court four times between 2008 and 2018. Congress would have known that and could easily have borrowed that language. They didn't. Congress could have used the policy statements in 1B1.10 that require the FSA actually lower the sentencing parameters, substitute only the statutory minimum and maximum. They couldn't. They didn't do that. The Congress could have directed the Sentencing Commission to draft a new policy statement limiting the second sentence, which will be granted in the extent of relief, but it did not. There is nothing in the Fair Sentencing Act that seeks to isolate the limited effect of the mandatory minimum. Instead, it simply gives the entire class of offenders a chance to go back and ask the district court, what would you have done if the lower penalties had been in effect? And I think the First Circuit really discussed this as well. If the penalties didn't change for a particular offender, I don't see why the district court would do anything different. Well, Your Honor, the floor and the ceiling may not have changed, but as the Supreme Court recognized in Dorsey, the guidelines are tied in proportional effect from the bottom or the top. And as the First Circuit recognized in Smith, the statutory minimums and maximums have a benchmark. They have an anchoring effect on the sentencing judge. This court has repeatedly held that the distance between a particular sentence and the statutory maximum is a measure of reasonableness. So again, this is just a paper motion asking the court, would you have done something different? Would knowing that the statutory, that it required 280 grams of crack cocaine instead of 50, have made a difference in the sentence you gave to this particular offender? The government's argument rests on what it presumes. Wasn't 282 found at sentencing? Your Honor, 287 grams was assessed in the PSI. But where I think that... But that was both for statutory and guideline purposes, right? I disagree, Your Honor. I disagree. And the reason I say that, I believe that the quantity for statutory purposes and the with the definition of covered offense. The jury didn't make a drug quantity finding, right? They did not. They did not. And therefore... He was charged with more than 50, and the only drug quantity finding that was made for purposes of sentencing was the 287, right? Correct, Your Honor. And we are not disputing that that is... So that drove both the statutory and the guideline range, didn't it? It did at sentencing, at the original sentencing, Your Honor. But my point is that that is not part of the offense of conviction. And Congress in 404A defines the term covered offense. And as the CUI case, which I think is really instructive, it's cited in Mr. Jackson's reply brief, it talks about offense for purposes of restitution and specifically rejected the notion that Congress would have used the term offense to include relevant conduct without additional cues. And so for a statute... Here's one point that I think hasn't been discussed. One of the strongest reasons to assume that a covered offense is more of a violation and less of just a statute. How could... If we assume that a violation of a federal criminal statute, if we assume that criminal statute is really what that's getting at, can you commit a criminal statute before August 3, 2010? I don't think you can. Can you? Well, I'm not sure, Your Honor, but I'm not sure I'm following the language of the statute Your Honor was referring to. So if you look at Section 404A, it says the term covered offense means a violation of a federal criminal statute. The statutory penalties for which were modified by Section 203 of the Fair Sentencing Act of 2010. And you've suggested that that phrase needs to... You and your colleagues have suggested that that phrase needs to modify only criminal statute and not violation. But wouldn't that also mean that the next clause, which reads, that was committed before August 3, 2010, also would have to modify federal criminal statute rather than violation? I don't think so, Your Honor, because it's the nearest reasonable reference rule, and I think that that phrase is just too far removed from the sections for which. Great. Let's just separate it. If you take out the parenthetical clause before it, the statutory penalties for which were modified, then you would just have the term covered offense means a violation of a federal criminal statute that was committed before August 3, 2010. In that case, you would have the same argument about the nearest reasonable reference, but it obviously couldn't apply in that case. It obviously means a violation. So why doesn't that suggest that the nearest reasonable reference also may be overridden for the earlier clause? I disagree, Your Honor. I think that was committed refers to the term offense. I think that's an equally fair reading of the statute. And to the extent that the court could read it either way, again, I think the rule of lenity would come into play. We now have five circuits that have read the statute in accordance with Mr. Jackson's construction. That reading, just basic subject verb agreement, would require that violation that was committed, violation to the subject and was committed is your verb phrase. I mean, that's just basic subject verb agreement, isn't it? I mean, there's no need to go to the nearest reasonable reference canon to determine what a phrase like statutory penalties for which were modifying, what is that phrase modifying? I mean, you have to read violation of the federal criminal statute that was committed before. Well, I see your point, Your Honor. Just basic subject verb agreement. Right. Well, and I, I see your point, Your Honor, but I still think on a whole, on the whole, I don't see that that in court on the whole, I don't see that incorporating relevant conduct. I just don't think Congress would have intended to create a definition after the decades that we have had defining what, what an offense means when we are looking retrospectively to incorporate relevant conduct without further cues. I would also just make a point that if I may, that this was a, a systemic injustice, the crack powder ratio, and Congress was trying to fill in gaps left by a decade of piecemeal changes. And so it made sense that they would enact a systemic solution. There is no way Congress would have, could possibly have nearly equalized the pre and post FSA offenders as the government has argued, has argued because there's just too many moving parts. You had 24 years of defendants who were under the 100 to one ratio. You had 14 years of defendants who were sentenced prior to apprendee, 19 of years of defendants sentenced under mandatory guidelines, plus an additional two years of defendants who in many jurisdictions, including this one were sentenced before sentencing judges who didn't know they were permitted to consider the crack powder ratio in their sentencing decisions. These are all important procedural defenses that anyone sentenced after 2010 would have had. They, they could have given charge bargaining leverage. They could have raised. None of those things would have been by virtue of the fair sentencing act. I mean, what you want to import, what you want to import into that proceeding is a lot of changes in law or, or, um, precedent that make clear what the law should always was. You want to import that, uh, into a proceeding where the fair sentencing act has nothing to do with it. Your honor. My point, my point was just that the government's main, uh, contextual and, uh, legislative purpose argument is that Congress only wanted this limited equalizing purpose. And the point I'm trying to make is that Congress couldn't possibly have equalized these broad distinct classes of offenders. And so what they chose instead was this broad resolution of giving everybody the opportunity to go back in and the legislative history supports that it is quoted in the first circuit Smith's decision. All we're asking for and all that is at issue today is eligibility. No one is entitled by it. Okay. Uh, Mr. Um, colon. May it please the court. This is Jonathan colon again, on behalf of the United States, regardless of what statutory penalties means in other contexts, statutory findings under this course, clear precedent include amounts that are admitted and then such as undisputed PSI drug amounts that are admitted. So even if sixth amendment jury finding rights applied in a modification proceeding, it wouldn't help Mr. Jackson. Is this court specifically found in one of his prior litigations that even if section two's 280 gram threshold applied to the modification seating quote, because Jackson was responsible for 287.2 grams of cocaine base, eight 41 B one a and eight 51 would still subjects Jackson to a mandatory minimum life term imprisonment because his offense involved at least 280 grams of cocaine base. Those were statutory rulings. And that's what this court found previously in one of his litigations and what we're asking this court to find again today. Um, Congress has clear purpose in four or four was to address the fact that the fair sentencing act reform didn't apply to prior defendants. Only those defendants who were helped by that reform should benefit to treat people previous to the reform better than people after reform treats that purpose on a 10, it turns it on its head. What in order to look at who is eligible for relief, it has to be people who were left behind by the fair sentencing act, not being applied retroactively. And if it wouldn't help him, and it certainly would not have helped Mr. Jackson, and he can't be someone who is eligible for relief today. Um, I want to go back to this question about a lean. So I think it really is important. Um, between 2010 when the fair sentencing act reform was, was enacted to address this disparity. And it was clear that Congress wanted to address this disparity in 2010. They did one thing, they raised the amount, triggering the statutory penalties, the same statutory penalties, but a different amount would trigger it. And between 2010 and a lean, the, the indictment and the jury had to have the fact that established just statutory maximum, but the judge could make findings that would establish your mandatory minimum. Nothing about section four or four changes what happens to those people. And in exactly the same way, nothing about section four or four changes how those facts are determined to people prior to 2010. Here, Mr. Jackson's facts are established. His statutory facts are established by the fact that the PSI alleged a drug amount of 287.2 grams based on the trial evidence. In fact, Mr. Jackson at trials didn't even dispute the amount that would be amount of drugs that were found at his residence. The only question was his responsibility for them. If he's responsible for the drugs, the only amount was 287.2 grams. And that was the amount that he did not dispute. And for which he was sentenced originally. And this court's clear precedent says that those facts are statutory triggering facts. And that is why Mr. Jackson is not someone who was left behind when the fair and not then. And if it's not fair because someone had a large amount, the discretionary phase will capture that. Well, even that, even if that is what this court does would be granting a huge benefit to all the previous crack offenders pre-2010.       And that's why it's not fair. And that's why it's not fair. It doesn't apply to non-crack offenders. That benefit to have a court in a modification proceeding, give a second look and decide under all kinds of changes in the law that were not part of section 404 would be granting a huge benefit to people prior to the reform. That isn't available to the people after the very reform we're trying to give them the benefit of. So that, that kind of ruling is so expansive and so far beyond what section 404 does that it can't be read in a way that would throw the entire question into the discretionary phase and not make it a threshold eligibility question as to whether a defendant's sentence would be different based on only the change in the triggering amount, not how the amount was found, not whether it was found by a judge or a jury, even if this court were to rule the sixth amendment jury rights apply to modification proceeding, which would be a change from how the Supreme Court recognized in Dillon and Green. Yes, Dillon and Green dealt with 3582 C2 and that is a different provision from C1B. But the, that's only looking at what the inquiry is being made to find the findings for C2 were different from the findings in C1B. But the threshold question of whether the sixth amendment jury rights apply at all in a modification proceeding where the penalties cannot be increased, they can only be reduced. Both Dillon, the Supreme Court and this court in green have found that sixth amendment jury rights to have findings to determine what amount, what your relevant amounts are for the modification proceeding. Both found that sixth amendment jury rights don't apply in that situation. And that's what we're asking this court to find here. Justice nothing in allows the court to go back and it limits the court to making its findings under green to a determined modification eligibility. Nothing changed. Nothing about 404 limits the court's ability to make those findings when necessary here. But of course, in Mr. Jackson's case, they're not necessary. He admitted that amount that triggered his statutory penalties. Then as this court has already found in his previous litigation, it should be the same result here. Someone who has admitted their amount by not challenging it, whether it by an effectual proper, whether it be by not challenging this amount, that that should be how this is applied to people in Mr. Jackson's situation. Similarly, I want to press the defense's point that it should be all defendants are eligible. And then we throw it to discretion. That's what the court in Worthing and Jackson in the fifth circuit found. And the problem, another problem with that, and there are cases pending in this circuit on this issue is in that case, even people who were literally charged with the higher amount, there's a case pending before this court called Bolden. And there may be others. If you, if you're saying that everyone charged sentence prior to 2010 is eligible, then you're throwing it even if people who were specifically charged, Mr. Jackson is a good example. If Mr. Jackson were charged today and was sentenced exactly as he was originally, or would he sentence exactly today based on an admitted drug amount or charged drug amount, he would face exactly the same statutory penalties. And if you say all pre 2010 offenders are eligible, then that would be putting him in a situation contrary to an exactly similar person today. And that cannot be what retroactively applying the reform was meant to do. Unless the court has any questions. I think we have, we've made our case. I hear none. Thank you, Mr. Cohen. Mr. Streisfeld, you say five minutes. Thank you, Your Honor. I agree with Mr. Cohen on one point. This is a huge benefit to defendants who were sentenced prior to 2010. And that is exactly what Congress intended it to be. That is the legislative history, calling it a historic achievement that is quoted in the Smith decision. Your Honor, to go back to your question about violation. I do think that that was mentioned by the fifth circuit and the grant decision where they acknowledge that would be a more difficult question, but to go back to Mr. Cohen's question about no one today would get this benefit. Nobody today could possibly be charged and sentenced to a mandatory life sentence under 851. The first step act was a years long bipartisan effort at massive criminal justice reform that did more than just for a foray. And one of those things they did was to eliminate entirely the mandatory life enhancement in section 851. Counsel, this is Judge Jung. Of course, that's not retroactive. We know that, correct? It's correct, Your Honor. All right. Two quick questions for you. You agree that we agree that you need apprendi to go back to sentencing. You need the apprendi a lien rule, either incorporated in this statute or somehow it, you need the benefit of that, correct? Your Honor, I believe incorporated into the definition of offense. Yes. Okay. All right. Secondly, even if you've got that, you know, if you've got that, your guy, I don't want to keep bringing up the guidelines here, but your guideline range would be 360 to life, correct? No, Your Honor. I believe with the changes to the guidelines, it would be much lower than that. Wait a minute. You have three prior felonies, right? And you're looking at a tenure to life statutory sentence, right? Your Honor, I believe the guidelines were, and I don't have them in front of me, Mr. Jackson was not a career offender because his priors were so old. And in fact, when the original sentencing judge sentenced Mr. Jackson in 1999, he stated that he was troubled by the fact that he was required to impose the life sentence based on priors Mr. Jackson had received when he was 17 years old. A decade later, when the current district judge assigned to the case denied Mr. Jackson's first motion under the retroactive guideline amendments, he too said that he would reduce the sentence if he had the authority. How did he get the life sentence? The life sentence was based on an 851 based on three priors that Mr. Jackson had received when he, correct. I believe his guidelines would have been 235, but he's already served that, Your Honor. He's already served approximately. So you're telling me that if he got what you wanted, his guidelines, he would not be a career offender, but he was before? He was never a career offender, Your Honor. The career offender guidelines time out, the priors. All right. So you're looking at, he's not a career offender. You're looking at 10 years to life if you went back. Correct. And in candor, Your Honor, Mr. Jackson's already in a halfway house. Much like Mr. Adler, my, my, correct. He's this, this argument is really far more towards principle than could help Mr. Jackson with the exception of reducing a supervised release. But I just, I just want to say, you know, both the original sentencing judge and the current judge assigned to this case recognized that the statutory penalties imposed in 1999 were too high. And to accept the government's argument, the court would have to believe that Congress did not intend section 404 of the first step back to reach Mr. Jackson's case. But two district court judges have told us that this is exactly the case that Congress needed to reach by making the Fair Sentencing Act retroactive. As long as, as long as you can take a lien and apprendi back to a de novo sentencing. No, Your Honor, we're not asking for a de novo sentencing. All we're asking for is for the, the statutory penalties that were proven to the jury to be determined, to determine the definition of covered offense. And I think if the court looks at the Huey case, it's very clear that without an indication to the contrary, when Congress uses the term offense, they are talking about elemental conduct. And I think even if they use the word violation in the context of this statute, they are talking about elemental conduct. The offense that Mr. Jackson committed, at the time, the only elements were found in section A of 841. The offense he committed was possession with intent to distribute crack cocaine. The penalty provisions were not considered an element of the offense at the time, and they are not considered an element of the offense under 404A. And if they are, they are as were found by the jury, which is no quantity in particular. I see my time is up. If there are no further questions. Thank you, Ms. Dreisbel. We have your case.